16-3861-cr
*United States v. Weaver*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 21st day of June, two thousand seventeen.

PRESENT:   JON O. NEWMAN,
                     JOSÉ A. CABRANES,
                     GERARD E. LYNCH,
                                 *Circuit Judges.*

---

UNITED STATES OF AMERICA,

                     *Appellee,*

                     v.                                                                      16-3861-cr

EDWARD MORRIS WEAVER, AKA NED,

                     *Defendant-Appellant.*[*]

---

FOR DEFENDANT-APPELLANT:            GEORGE W. HICKS, JR. (C. Harker
                                                               Rhodes IV and Michael D. Lieberman, *on
                                                               the brief*) Kirkland & Ellis LLP,
                                                               Washington D.C.


FOR APPELLEE:                                       DOUGLAS N. LETTER (William E.
                                                               Havemann and Scott R. McIntosh,

---

[*] The Clerk of Court is directed to amend the official caption as set forth above.

Appellate Staff, *on the brief) for* Chad A. Readler, Acting Assistant Attorney General, Civil Division, Washington D.C.; Robert L. Capers, United States Attorney for the Eastern District of New York, Brooklyn, NY.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Joan M. Azrack, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the November 9, 2016 judgment of the District Court is **AFFIRMED**.

Defendant-appellant Edward Weaver was the Chief Executive Officer of Vendstar, a company accused of selling candy-vending machines using fraudulent sales tactics and misrepresentations. Weaver appeals from a judgment of conviction dated November 9, 2016, after a jury found him guilty of mail fraud, wire fraud, conspiracy to commit mail and wire fraud, and making false statements to government officials. The District Court sentenced Weaver to sixty months' imprisonment.

On appeal, Weaver argues that he is entitled to: (1) a judgment of acquittal on the fraud and conspiracy charges because the alleged misrepresentations were immaterial as a matter of law; (2) a judgment of acquittal on the fraud and conspiracy charges because there was insufficient evidence of his fraudulent intent; (3) a judgment of acquittal or, in the alternative, a new trial on his false statements charge because the two allegedly false statements were actually true or, alternatively, fundamentally ambiguous; (4) a new trial on all charges because the government made an improper argument during its rebuttal summation; and (5) resentencing because the District Court's loss calculations were not supported by adequate evidence. The first issue concerning materiality is resolved in an opinion issued simultaneously with this summary order. We assume the parties' familiarity with the underlying facts and the procedural history of the case.

1.  **There Was Sufficient Evidence of Weaver's Fraudulent Intent.**

Weaver argues that there was insufficient evidence for a jury to conclude that he acted with fraudulent intent. We will overturn a conviction based on insufficient evidence only if we determine that "no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Morrison*, 153 F.3d 34, 49 (2d Cir. 1998) (internal quotation marks omitted). "We defer to the jury's determination of the weight of the evidence and the credibility of the witnesses, and to the jury's choice of the competing inferences that can be drawn from the evidence." *Id.*

2

An individual is guilty of mail and wire fraud if he "use[s] the mail or wires in furtherance of a scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises." *United States v. Dinome*, 86 F.3d 277, 283 (2d Cir. 1996) (internal quotation marks omitted). Accordingly, "[t]he essential elements of a mail [or wire] fraud violation are (1) a scheme to defraud, (2) money or property [as the object of the scheme], and (3) use of the mails [or wires] to further the scheme." *Id.* (internal quotation marks omitted and alterations in original). Among other elements, the government must prove that the defendant acted with fraudulent intent. *Id.* In other words, the government "must show that some actual harm or injury was contemplated by the schemer." *Id.* (internal quotation marks and emphasis omitted).

Weaver's argument that there was insufficient evidence of his specific intent to defraud Vendstar customers fails. After careful review of the record, we conclude that there was sufficient evidence at trial to permit a rational jury to infer that Weaver intended to defraud Vendstar customers, including evidence that Weaver approved lies in Vendstar's promotional materials and instructed his employees to use inflated revenue estimates on sales calls. That trial evidence sufficiently supported the conviction. Although there was some evidence suggesting that Weaver purported to discourage fraudulent sales tactics, the jury heard and rejected that evidence.

2. **Weaver is Not Entitled to a Judgment of Acquittal or a New Trial on The False Statements Charge.**

It is well settled that, in a prosecution for perjury or false statement, "[a]bsent fundamental ambiguity or impreciseness in the questioning, the meaning and truthfulness of appellant's answer [is] for the jury." *United States v. Bonacorsa*, 528 F.2d 1218, 1221 (2d Cir. 1976). Moreover, "circumstantial evidence, including proof of a motive to falsify, often may serve to convince a reasonable juror beyond a reasonable doubt of a witness'[s] criminal intent." *United States v. Lighte*, 782 F.2d 367, 373 (2d Cir. 1986). A court is "hard pressed to overturn the fact finders' determination especially since the evidence must be viewed in a light most favorable to the government." *Id.* at 374.

The two false statements at issue are Weaver's statement that there was "no relationship" between Vendstar and any locating service and his statement that "Vendstar had not referred customers to [Jim Ellis] since 2006." JA 45-46. Weaver argues that there was insufficient evidence that either of these statements, when taken in context, was false and, alternatively, that both statements were fundamentally ambiguous. We address both arguments statement by statement.

Weaver contends that his statement that Vendstar had "no affiliation" with any locating service was fundamentally ambiguous because he could have meant either that Vendstar had no *formal* affiliation, which would have been true, or that Vendstar had no *informal* affiliation, which would have been false. Alternatively, Weaver contends that his statement was actually true because he later told the agent that he referred customers to locating services, showing an informal

3

affiliation, and thus he clearly understood the question to be asking about a *formal* relationship, of which there was none. We disagree with both arguments.

First, there was ample evidence from which a rational jury could conclude that Weaver understood the government agent's question to be asking about *any* affiliation between Vendstar and the locating services. Second, there was evidence that Vendstar had other informal affiliations pertinent to the alleged fraud that he did not disclose, for example, Vendstar coordinated with locating services on sales calls to help lure customers into believing that the vending machine business was more lucrative than it really was. Accordingly, there is no basis for us to overturn the jury's finding that Weaver's "no affiliation" statement was false.

Weaver similarly contends that his statement explaining that his company had not referred customers to Ellis since 2006 was either ambiguous or true because Ellis was operating his locating services under pseudonyms after 2006. Again, we disagree. There was ample evidence from which a rational jury could conclude that Weaver understood that the agent was asking about Ellis the person, regardless of any pseudonym Ellis was using at any particular time, and that Weaver knew that Ellis was the man behind the pseudonyms. For example, there was evidence establishing that Weaver jokingly referred to Ellis by his assumed names. Thus, Weaver's argument for an acquittal or a new trial relating to his second false statement also fails.

### 3. Weaver is Not Otherwise Entitled to a New Trial on All Charges.

A prosecutor is not permitted "to suggest to a jury that the conviction of a testifying co-conspirator is evidence that a defendant on trial is guilty." *United States v. Louis*, 814 F.2d 852, 856 (2d Cir. 1987). Nevertheless, he or she may disclose a co-conspirator's conviction in order to disclose "matters damaging to the credibility of a witness and [to] contradict[ ] . . . any inference that the government is concealing a witness' bias." *Id.* It is also permissible for a prosecutor, in response to a defendant's claim that cooperating witnesses are lying, to "invite[ ] the jury to consider the implausibility of [a defendant's] claim that the witnesses were all committing perjury." *United States v. Rodriguez*, 587 F.3d 573, 583 (2d Cir. 2009).

Weaver contends that the government improperly argued to the jury during its rebuttal summation that the guilty pleas of cooperating witnesses were evidence of Weaver's guilt. We disagree. After careful review of the government's rebuttal and Weaver's own summation and trial defense, we conclude the government did not act improperly in referring to the cooperating witnesses' convictions. Weaver and his co-defendants repeatedly attacked the credibility of the government's cooperating witnesses, arguing that they were lying and cooperating with the government for their own gain and that they were acting on their own. The government referred to the cooperating witnesses' acknowledgement of participation in the scheme to defraud in its rebuttal summation for at least two reasons. First, the government sought to combat the argument that the witnesses were lying about their guilt because they did not want to continue to fight the government

4

at trial. Second, the government attempted to demonstrate that Weaver's contention that the eight cooperating witnesses acted without the involvement of Vendstar's CEO was implausible. Under the circumstances presented, both arguments were permissible.

### 4.  Weaver's Sentence Should Not Be Vacated.

Finally, Weaver asks us to vacate his sentence because, he contends, the District Court's loss calculations were not supported by sufficient evidence, and thus the District Court committed a procedural error in calculating the applicable Guidelines range. Even assuming *arguendo* that the District Court erred in calculating the different loss amounts, we find that any such error was harmless because "the record indicates clearly that the [D]istrict [C]ourt would have imposed the same sentence in any event." *United States v. Kent*, 821 F.3d 362, 367 (2d Cir. 2016) (internal quotation marks omitted). Specifically, the District Judge explained that "[e]ven if the lower guidelines range were the applicable range, I would still give the same sentence that I'm about to pronounce"; that "[t]he parties' disputes about the loss amount . . . are largely beside the point. Whatever the appropriate loss calculation is under the guidelines, that does not change the conduct of the defendant and his coconspirators . . . I'm sentencing here the old fashioned way"; and that "[i]n determining the appropriate sentence . . . I have focused on the defendant and his conduct, not the intricacies of calculation loss under the guidelines." JA 747; *see United States v. Binday*, 804 F.3d 558, 598 (2d Cir. 2015) (concluding that imperfections in the method of calculating the loss amount were harmless where the "district court explained that it would 'calculate the guidelines, consider the guidelines, and then sentence in the old-fashioned way'").

### CONCLUSION

We have considered all of the arguments raised by Weaver on appeal and find them to be without merit. For the foregoing reasons, the November 9, 2016 judgment of the District Court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk